

**Public Service Commission**
**Audrey Zibelman**
Chair

**Patricia L. Acampora**
**Gregg C. Sayre**
**Diane X. Burman**
Commissioners

**Kimberly A. Harriman**
General Counsel
**Kathleen H. Burgess**
Secretary

Three Empire State Plaza, Albany, NY 12223-1350
www.dps.ny.gov

May 6, 2016

**VIA CM/ECF**
Hon. Thérèse Wiley Dancks
U.S. Magistrate Judge
U.S. District Court for the Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

      Re:    *Entergy Nuclear FitzPatrick, LLC v. Zibelman,*
              No. 15-cv-230 (DNH)(TWD)

Dear Judge Dancks,

      In response to your Honor's request, the New York Public Service Commission ("NYPSC") addresses how the Supreme Court's decision in *Hughes v. Talen Energy Marketing LLC*, 136 S. Ct. 1288 (2016), impacts discovery and the schedule in this case. The NYPSC agrees that the impact of *Hughes* on the challenged Dunkirk Term Sheet ("Term Sheet") is a significant question. To that end, and as detailed below, the NYPSC is evaluating opening a proceeding on *Hughes*' implications for the Dunkirk Term Sheet and to take such further steps as the NYPSC determines to be necessary and appropriate. Those actions may include reconsideration of the NYPSC's authorization of the Term Sheet. The NYPSC is also assessing the steps that must be taken to initiate the referenced proceeding, which may include the NYPSC seeking a stay of a pending state court appeal challenging the NYPSC's approval of the Term Sheet. To accommodate anticipated actions, the NYPSC asks that the stay of discovery be continued for 30 days. The NYPSC will report to the Court at that time (or sooner, if appropriate) regarding the status of any further administrative proceedings and an assessment of whether continuation of the stay is warranted. Under the circumstances, it is in the interest of justice and judicial economy to continue the stay, as the Dunkirk repowering is currently on hold, and the NYPSC's reconsideration of the Term Sheet could well provide a dispositive basis for dismissal of this case on grounds of ripeness or mootness.

      Separately, continuation of the stay also would be warranted because *Hughes,* construed in light of the Supreme Court's decision last term in *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015), establishes that Entergy's federal preemption claim[1] is not properly before the Court because there is no private cause of action under the Federal Power Act ("FPA"), the Supremacy Clause, or this Court's equitable jurisdiction. The two Supreme Court decisions evidence a dispositive basis for the immediate dismissal of Count I without resort to discovery. Thus, if the Court does not stay discovery to accommodate NYPSC's reevaluation of its authorization of the Term Sheet, it should set a schedule for the Defendants to file a Rule 56 motion seeking dismissal of at least Count I, and should keep the stay in place pending the Court's decision on such motion.[2]

---

[1] Amended Complaint for Declaratory and Injunctive Relief, ECF No. 51, Count I ¶¶ 73-85.

[2] NYPSC understands that Dunkirk intends to move for summary dismissal of Entergy's claims as a whole, and NYPSC reserves its right to do so as well.

Given the issuance of *Hughes*, and the information explained above, NYPSC believes it is in the interests of justice and judicial economy to continue the stay of discovery, and, should it prove necessary, set a schedule for the submission of the contemplated Rule 56 motions. If the stay is lifted, the Defendants will be compelled to engage in expensive, resource-intensive litigation. This is not sensible given the NYPSC's stated interest in considering the implementation of a proceeding to reconsider the Term Sheet, and the absence of any prejudice to Entergy as the Dunkirk repowering is not imminent. By way of comparison, the district court decision underlying the *Hughes* case is more than 130 pages long,[3] and reflects very substantial expenditures in time and resources on document production, depositions, motions practice, expert witness testimony, trial, and briefing. NYPSC submits that similar efforts here can be obviated (or, at least, narrowed) by continuing the stay of discovery pending its reevaluation of Term Sheet authorization, or resolution of the summary judgment motions.

I. **THE NYPSC SHOULD BE ACCORDED A REASONABLE PERIOD OF TIME TO CONSIDER AND, IF APPROPRIATE, IMPLEMENT A PROCEEDING TO ADDRESS THE IMPACT OF HUGHES ON THE TERM SHEET**

*Hughes* concerned a federal district court preemption challenge to a "Maryland[] program [that] provides subsidies, through state-mandated contracts, to a new generator, but conditions receipt of those subsidies on the new generator selling capacity into a FERC-regulated wholesale auction." *Hughes*, 136 S. Ct. at 1292. More specifically, the Court explained that:

> Maryland solicited proposals from various companies for construction of a new gas-fired power plant at a particular location, and accepted the proposal of petitioner CPV Maryland, LLC (CPV). Maryland then required [its retail utilities] to enter into a 20-year pricing contract (the parties refer to this contract as a "contract for differences") with CPV at a rate CPV specified in its accepted proposal. Unlike a traditional bilateral contract for capacity, the contract for differences does not transfer ownership of capacity from CPV to the LSEs. Instead, CPV sells its capacity on the PJM market, but Maryland's program guarantees CPV the contract price rather than the auction clearing price.

*Id.* at 1294-95 (footnote omitted). The Court found the Maryland program field preempted because it conditioned contract payment on CPV's unit "clearing" the auction. *Id.* at 1299 ("So long as a State does not condition payment of funds on capacity clearing the auction, the State's program would not suffer from the fatal defect that renders Maryland's program unacceptable.").[4] The Supreme Court did not reach, and expressly did "not resolve," *id.* at 1299 n.13, any issues of conflict preemption, although the Fourth Circuit in its decision below had found the Maryland program unlawful on grounds of field and conflict preemption.

It is appropriate for the NYPSC to address, in the first instance, the implications of *Hughes* for the Term Sheet. NYPSC is now evaluating whether to implement a proceeding to receive and consider public comments on the impact of *Hughes*, and to assess what further actions might be appropriate in light of the decision. The NYPSC is assessing the steps that must be taken to initiate the referenced proceeding, which may include the NYPSC seeking a stay of a pending state court appeal challenging the NYPSC's approval of the Term Sheet.

To accommodate anticipated actions, the NYPSC asks that the stay of discovery be continued for 30 days. NYPSC commits to report to the Court at that time regarding the status of any further administrative proceedings and an assessment of whether continuation of the stay is warranted. Among other things, NYPSC would assess the need to seek a stay of the Sierra Club's appeal to the Appellate Division of New York State Supreme Court, Third

---

[3] *PPL EnergyPlus LLC v. Nazarian*, 974 F. Supp. 2d 790 (D. Md. 2013).

[4] That is not the case here. The Dunkirk Term Sheet is fundamentally different from the Maryland program, in that the Term Sheet provides a set monthly payments to NRG for unit repowering *regardless* of whether the repowered capacity clears the NYISO auction. Statement of Niagara Mohawk Power Corporation D/B/A National Grid in Support of Term Sheet Agreement, Attachment 1, Term Sheet, ECF No. 1-2, at 24.

Judicial Department of the NYPSC's June 13, 2014 order authorizing the Term Sheet.[5] Sierra Club has not challenged the Term Sheet on federal preemption grounds. Because Sierra Club has not filed its brief and thus perfected its appeal, NYPSC reasonably believes that there are adequate grounds on which to request a stay.

The Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To that end there is no good reason for parallel proceedings before this Court and the NYPSC. The limited stay sought here, preparatory to a reopening of the state proceedings, is in no way prejudicial to Entergy. NRG is not currently going forward with the Dunkirk repowering.[6] In these circumstances, the modest delay necessary to accommodate the state's action weighs little against the certain burden and expense of substantial discovery and related motions practice. There is no point commencing discovery on a moving target. And if the NYPSC does reconsider its authorization of the Term Sheet that action could substantially alter the posture of these proceedings or warrant dismissal on grounds of ripeness or mootness.

## II. THE HUGHES DECISION EXPRESSLY LEAVES OPEN DISMISSAL OF FEDERAL DISTRICT COURT FPA PREEMPTION SUITS ON *ARMSTRONG* GROUNDS

While NYPSC is considering opening a proceeding to address the implications of *Hughes's* substantive preemption rulings, *Hughes* itself makes clear that federal district courts are not the proper entities to decide FPA-based preemption claims. At oral argument one Supreme Court Justice flatly identified the procedural posture of the case as a "problem" due to the lack of private cause of action under the Supremacy Clause.[7] Consistent with that observation, *Hughes* questions whether other FPA preemption suits can be brought in district court. The Court states that "[b]ecause neither CPV nor Maryland has challenged whether plaintiffs may seek declaratory relief under the Supremacy Clause, the Court assumes without deciding that they may." *Hughes*, 136 S. Ct. at 1296 n.6. That footnote gains fuller meaning when construed in light of the Supreme Court's 2015 decision in *Armstrong,* 135 S. Ct. at 1384, that "the Supremacy Clause does not confer a right of action." The finding in *Armstrong* that "the Supremacy Clause . . . certainly does not create a cause of action," 135 S. Ct. at 1383, is a sea change ruling that reverses decades of contrary lower court decisions. *Armstrong* further held that the statutory scheme of administrative relief "establish[ed] Congress's 'intent to foreclose' equitable relief."[8] Although *Armstrong* addressed the Medicaid Act, the Court went out of its way in *Hughes* to leave open dismissal on *Armstrong* grounds of other FPA preemption district court cases, such as Entergy's here.[9] At oral argument in *Hughes*, which involved preemption by the same statute on which Entergy relies here, Justice Breyer questioned "the procedural posture of [the] case" because "there isn't" "a Supremacy Clause private right of action." Tr. 24:3-7. If discovery is not stayed to accommodate NYPSC reconsideration of the Term Sheet, that problem should be ventilated now before extensive resources are expended on discovery concerning the Term Sheet. Entergy's invocation of the Supremacy Clause

---

[5] *Proceeding on Motion of the Comm'n to Examine Repowering Alts. To Util. Transmission* Reinforcements, Order Addressing Repowering Issues and Cost Allocation and Recovery, Case No. 12-E-0577 (NYPSC June 13, 2014), *aff'd*, *Sierra Club v. Pub. Serv. Comm'n*, Index No. 4994-14 (Sup. Ct. Albany County Aug. 31, 2015) (*appeal pending*).

[6] In the event that NRG takes steps to commence the repowering, then it can be directed to inform this Court, which can decide at that point whether the discovery stay should be lifted.

[7] Tr. 24:2 (Breyer, J.). At the time of the lower court decisions in *Hughes* it was settled law in the Fourth Circuit (which rendered the decision affirmed in *Hughes*) that the Supremacy Clause did provide a private cause of action. The Fourth Circuit reaffirmed this position in *United States v. South Carolina* 720 F.3d 518 (4th Cir. 2013) rejecting a challenge based upon Chief Justice Roberts's dissent in *Douglas v. Independent Living Center of Southern California, Inc.*, 132 S. Ct. 1204 (2012).

[8] *Id.* at 1358 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002))

[9] The implications of *Armstrong* are already being felt in the district courts. *See, e.g., Friends of East Hampton Airport, Inc. v. Town of E. Hampton*, No. 15-cv-2246, 2015 WL 3936346, at *9 (E.D.N.Y. June 26, 2015) (dismissing on *Armstrong* grounds federal preemption claim concerning the Airport and Airway Improvement Act of 1982).

(ECF No. 51, ¶ 25) does not provide it with a private right of action or enable Entergy to move forward with its preemption claims.

### *There Is No Express or Implied Right of Action Under the FPA*[10]

A cause of action exists only where the "plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court." *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). That is not the case here. Entergy's Count I alleges "Federal Power Act preemption under the Supremacy Clause." ECF No. 51, at 30. Entergy alleges no express or implied cause of action under the FPA and, outside the irrelevant context of the Public Utility Regulatory Policies Act ("PURPA"),[11] there is none. *See* FPA, 16 U.S.C. §§ 791a-825r; *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 255 (1951) ("judgment below is affirmed upon the ground that the petitioner has not established a cause of action" under the FPA); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1144 (3d Cir. 1977) ("no implied private cause of action under the Natural Gas Act [("NGA")]").[12]

The exclusive inquiry in ascertaining whether Congress impliedly created a private cause of action "is to interpret the statute Congress has passed." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The absence of an express cause of action under any relevant provision of the FPA weighs heavily, if not conclusively, against the finding of an implied cause of action. *See, e.g., DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 81 (2d Cir. 1992) (Winter, J., concurring) ("no federal private right of action for injunctive relief to be inferred from the [FPS's] silence"); *Mich. Corr. Org. v. Mich. Dep't. of Corr.*, 774 F.3d 895, 905-06 (6th Cir. 2014) ("Finding no express private right of action, *Sandoval* and *Brunner* concluded that Congress did not intend to permit private enforcement of the statute, whether through an implied right of action, [42 U.S.C.A.] § 1983, or *Ex parte Young*" (citing *Sandoval*, *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008)). In the limited circumstance where Congress intended to create a private right of action under the FPA, it did so explicitly. 16 U.S.C. § 824a-3(h)(2)(B). Congress's failure to do so elsewhere points decisively against implying any private right of action.

### *The FPA Impliedly Forecloses an Original Action for Equitable Relief Before This Court*

Entergy claims a right to injunctive relief to enjoin the Dunkirk Term Sheet because it "functionally sets [a] wholesale price" (DN 51 ¶ 76), and "stands as an obstacle to FERC's [auction market] approach." *Id.* ¶ 83. But Entergy cannot seek equitable relief here because doing so improperly "circumvent[s] Congress's" statutory scheme of administrative remedial enforcement. *Armstrong*, 135 S. Ct. at 1385. The circumstances here accord in full with Supreme Court's analysis in *Armstrong*. There, the Supreme Court found evidence of Congress's intent under the Medicaid Act to foreclose equitable relief where the federal statute at issue provided an express administrative relief process based upon a "judgment-laden standard" entrusted to the Secretary of Health and Human Services:

> Explicitly conferring enforcement of this judgment-laden standard upon the Secretary [of Health and Human Services] alone establishes, we think, that Congress "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action."

*Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment).

The Court's reasoning in *Armstrong* concerning the Medicaid Act applies with full force here concerning the FPA. The Federal Energy Regulatory Commission has exclusive jurisdiction under the FPA over wholesale rates

---

[10] Because of the relationship of *Hughes* and *Armstrong* to the procedural posture of this case, and the importance of the requested relief, we believe it necessary and helpful to develop the issue in detail to show the likely merit in NYPSC's alternative proposed approach going forward.

[11] PURPA concerns small cogeneration and power projects. Congress included PURPA within the FPA. Pursuant to 16 U.S.C. § 824a-3(h)(2)(B) "[a]ny electric utility, qualifying cogenerator, or qualifying small power producer may . . . bring an action in the appropriate United States district court" in certain circumstances not applicable here.

[12] *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981) (the FPA and NGA are construed *in pari materia*).

and practices affecting such rates. It administers an extensive scheme of administrative relief, and, where appropriate, FERC will find preempted state action intrusive of its jurisdiction.[13] And FERC has the Dunkirk Term Sheet before it. ECF No. 96, at 17. The FPA's scheme of administrative enforcement "establish[es] Congress's 'intent to foreclose' equitable relief." *Armstrong*, 135 S. Ct. at 1385 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)). Unlike the "discretionary" doctrine of primary jurisdiction, the absence of a statutory or equitable cause of action mandates dismissal.[14]

## CONCLUSION

Rather than devoting substantial resources on Rule 56 motions or discovery, the better course of action is to continue the stay of discovery for a reasonable period of time to accord NYPSC the opportunity to consider and, if appropriate open a proceeding to address the impact of *Hughes* and the NYPSC's authorization of the Term Sheet. NYPSC seeks a 30-day stay subject to the submission of a status report on this undertaking and further evaluation of the propriety of continuance of the stay. If the Court does not stay discovery for this reason, then it should continue the stay and set dates for the filing of NYPSC's and Dunkirk's Rule 56 motions. Should the court lift the Stay, NYPSC supports the scheduling dates in Dunkirk's proposed case management plan.[15]

Respectfully submitted,

/s/ Jonathan D. Feinberg
Jonathan D. Feinberg
Solicitor

cc: CM/ECF Service List

---

[13] *Cal. Pub. Utils. Comm'n*, 132 FERC ¶ 61,047 P 64, *on reh'g*, 133 FERC ¶ 61,059 (2010), *reh'g denied*, 134 FERC ¶ 61,044 (2011) (California Public Utilities Commission's "AB 1613 Decisions constitute impermissible wholesale rate-setting by the CPUC"); *R.E. Ginna Nuclear Power Plant, LLC*, 154 FERC ¶ 61,157, P 26 (2016) (requiring modification of provisions concerning the NYPSC in FERC-jurisdictional settlement agreement because they "potentially infringe upon the Commission's exclusive jurisdiction over wholesale rates under the FPA"). FERC's actions in these proceedings are contrary to this Court's prior finding that FERC must "assume the lawfulness of the Commission's Order approving the Term Sheet." Memorandum—Decision and Order, ECF No. 96, at 19.

[14] When a court cannot adjudicate the underlying right of action, "it lacks jurisdiction over a related declaratory judgment action as well." *Mich. Corr. Org.*, 774 F.3d at 903. *See also id.* at 904; *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

[15] NYPSC is generally supportive of Dunkirk's proposed Revised Civil Case Management Plan with the following provisos. As discussed above, discovery should be stayed to accommodate the NYPSC's evaluation of whether to open a proceeding to address the impact of *Hughes*. Failing that, NYSPC supports the filing of Rule 56 motions and continuation of the discovery stay while those motions are pending. In addition, NYPSC disputes the Court's subject-matter jurisdiction because Entergy lacks a judicially cognizable injury under the filed-rate doctrine. NYPSC also contends and has raised as an affirmative defense that Entergy's claims are barred on grounds of issue and claim preclusion. Alternatively, and further, NYPSC continues to allege that Entergy's claims should be dismissed for reasons of primary jurisdiction and preserves and does not waive this defense, nor any other affirmative defense set forth in its Answer to Amended Complaint (ECF No. 57) going forward.